UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.:

NATACHA ALEXANDRE,

    Plaintiff,

vs.

CITY NATIONAL BANK OF FLORIDA,
A Florida corporation,

    Defendant.
_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

1. Plaintiff, NATACHA ALEXANDRE, by and through her undersigned attorney, alleges the following against Defendant, CITY NATIONAL BANK OF FLORIDA, a Florida corporation, organized under the laws of the State of Florida, and states, to wit:

**INTRODUCTION**

2. This action is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. § 2000e, et seq.). The jurisdiction of this Court is invoked to secure protection of and redress the deprivation of rights guaranteed by federal law involving discrimination in employment.

**JURISDICTION AND VENUE**

3. This is an action which arises under Title VII of the Civil Rights Act of 1964, as amended, (42 U.S.C. § 2000e, et. seq.).

4. Jurisdiction is founded on 42 U.S.C. 2000e-5(f)(3) and 28 U.S.C. § 1331 (Federal Question).

5. Venue is proper in the Southern District of Florida pursuant to 42 U.S.C. § 2000e-5(f)(3), Title VII "Venue"; and 28 U.S.C. § 1391(b) and ( c) (Venue generally).

## EXHAUSTION OF ADMINISTRATIVE PROCEDURES

6. Plaintiff, NATACHA ALEXANDRE, timely filed with the Equal Employment Opportunity Commission ("EEOC") a charge of discrimination against Defendant, CITY NATIONAL BANK OF FLORIDA. Plaintiff, NATACHA ALEXANDRE, received a notice of the right to sue from EEOC within ninety (90) days of the filing of this Complaint. A copy of the right to sue notice letter from the EEOC is attached as Exhibit "1".

## PARTIES

7. At all times material to this action, Plaintiff, NATACHA ALEXANDRE, is a resident of Broward County, Florida, is over the age of 18, and is otherwise sui juris.

8. At all relevant times, Defendant, CITY NATIONAL BANK OF FLORIDA, is a Florida corporation organized under the laws of the State of Florida, and the incident occurred in Miami-Dade County, Florida.

9. At all relevant times, Defendant, CITY NATION BANK OF FLORIDA, [Hereinafter, "CNB"], is engaged in an industry affecting commerce.

10. At all relevant times, Defendant, CNB, employs Plaintiff, NATACHA ALEXANDRE, within the meaning of 42 U.S.C. § 2000e-(b).

11. Defendant, CNB, has engaged in policies and practices which are willfully, intentionally and unlawfully discriminating against Plaintiff on the basis of her race (Black) and her national origin (Haitian).

## **FACTUAL ALLEGATION TO ALL COUNTS**

12  Plaintiff, ALEXANDRE, sues Defendant, CNB, and re-alleges paragraphs 1 through 11, as if fully set forth herein and are incorporated by this reference.

13. Plaintiff, ALEXANDRE, is a Black female of Haitian-African descent and ancestry, protected under Title VII (42 U.S.C. § 2000(e)(b)).

14. Defendant, CNB, is an employer within the meaning of Title VII. Moreover, at all time material hereto, Plaintiff, ALEXANDRE, is employed by Defendant, CNB, as a full time Business Sales and Service Manager Senior a/k/a Bank Branch Manager.

15. Plaintiff's work duties as the Business Sales and Service Manager include working closely with the recruitment and selection process, such as conducting any providing feedback from interviews, recruiting within the budget, identifying opportunities for cost savings and ensuring proper department specifics for on boarding; providing timely feedback to employees, coaching, taking disciplinary actions, making annual evaluations, reporting; working hand in hand with the Business Market Leader (BML) and Small Business Banker (SBB) for Banking Center's deposit and loan program growth, focusing on client retention and identifying new opportunities; working closely with BML and SBB to bring and promote referrals to fruition; adhering to the cash handling, operational, security and BSA/AML policies and procedures to avoid liability; coaching the Business Transaction Representatives and/or Business Transaction Leaders to standards set by CNB for client referrals, among other things. Plaintiff, ALEXANDRE, at all times material, is qualified for her position as a Business Sales and Services Manager, and was performing her job satisfactorily.

16. Plaintiff has been in the banking field for more than twenty (20) years. During twelve (12) of those twenty (20) years, Plaintiff has been a Branch Banking Manager. Furthermore, Plaintiff has been working with the Defendant for seven (7) years. Plaintiff has been a Banking Branch Manager with Total Bank since 2012. On June 18, 2018, date, Total Bank merged with Defendant, CNB. Defendant retained Plaintiff in the same capacity as she was while at Total Bank, as Banking Branch Manager.

17. Plaintiff has several awards and certificates of achievement as Banking Branch Manager with Total Bank and her former employer. Furthermore, as a top performer, Plaintiff has earned several thousands of dollars in bonuses and commissions, both quarterly and annually, based on Plaintiff's performance levels.

18. The Bank Branch Center where Plaintiff works has a goal of $250,000.00, in new deposits, per month. Plaintiff's Bank Branch Center has consistently brought more than One Million ($1,000,000.00) Dollars, in new deposits each month. Because of Plaintiff's high performance, Plaintiff normally has a bonus of several thousand dollars. In fact, Plaintiff's last performance incentives for 2018, totaled approximately Twenty Two Thousand Five Hundred ($22,500.00) Dollars.

19. Defendant CNB hired a new employee and said new employee was assigned to Plaintiff's Banking Center. Plaintiff was not given the opportunity to interview that new employee to see if he would be a good fit for her staff at Plaintiff's Branch Banking Center. One day, Plaintiff simply noticed a person come into the Branch Banking Center and introduce himself as "J.S.", and who told Plaintiff, "I am the new Branch Business Banker; I will working at your office." Plaintiff had to call CNB's Human Resources Department to confirm if that was true or not because no one from Human Resources ("HR") gave

Plaintiff any prior notice that "J.S." would be coming to work at her Branch Banking Center.

20. Plaintiff believed that she was not consulted with about the hiring of the new Business Banker, "J.S.", because Plaintiff is Black and Haitian-African whereas other White or Hispanic Branch Banking Managers, in similar positions to Plaintiff, have been consulted with in the past before such a move. Plaintiff talked to some of her peers about the incident, all of whom were in disbelief that it had happened because they had never seen this before.

21. Plaintiff as the Branch Banking Manager, who was charged with the overall operations of her Branch Center, gave "J.S." an assignment to do as the Branch Business Banker. However, "J.S." did not do the task assigned to him by Plaintiff because it was J.S.'s impression that Plaintiff was not his boss and/or had any supervisory authority over him. In fact, out of anger or contempt, J.S. screamed at Plaintiff when she inquired as to the status of the assigned project. The actions and demeanor of "J.S.", as directed to Plaintiff, were tantamount to "insubordination", which Plaintiff treated as such. Thus, on or about April 12, 2019, and again, on April 15, 2019, Plaintiff reported the incident involving J.S.'s insubordination to CNB's HR Department, but the HR Department did nothing about it.

22. Plaintiff called CNB's Human Resources Department and its Area Manager to complain about "J.S.'s" behavior which was progressively deteriorating. In Plaintiff's view as an experienced Branch Banking Manager, her Branch Banking Center was no longer an environment that was safe for both customers and her staff and co-workers, for whom she was responsible. Again, CNB's HR Department and its upper management did nothing

in response to Plaintiff's concerns that she voiced to Defendant's HR Department as well as to its Area Manager.

23. On April 29, 2019, "J.S.", using a red marker, wrote on the glass wall of his office in the Banking Center: "THERE IS A RHYTHM AND REASON TO MY MADNESS", which statement ended with the image of a Smiley Face.

24. On April 30, 2019, "J.S." taped to the glass wall of his office a letter that he sent via email to Joanne Morris, CNB's Director of Human Resources. Said letter was in large print and said:

> **"Joanne,**
>
> **One week ago you met with me and promised me a callback that same afternoon and it is one week later no call, no help, and I in my office a nervous breakdown.**
>
> **Please do not call 911, just refer to a therapist who can HELP ME!**
>
> **I will quietly wait under my desk for help."**

25. Plaintiff, as the Branch Banking Center's Manager, believed that "J.S." was a danger to himself, to Plaintiff, co-workers and customers, which caused her to call "911", which, in response, dispatched Police and Fire Rescue to the Branch Banking Center. Police arrived, as did Fire Rescue, who tended to "J.S.'s" medical needs. During the time that Police and Fire Rescue were tending to "J.S.", he took off his jacket and dress shirt in his office. When Fire Rescue asked to speak to "J.S.", he asked Fire Rescue to closely follow him and that he wanted to go to Plaintiff's office because that is where he felt the most comfortable. Once "J.S." was in Plaintiff's office, his level of agitation and distress increased, causing him to pick up the furniture in Plaintiff's office and throw each item of furniture into the air.

26. On or about May 2, 2019, Joseph Cross, who is Hispanic, and is the Regional Director of Operations, visited the Branch Banking Center to interview Plaintiff's employees about Plaintiff, not about "J.S.'s" behavior or the incident involving him.

27. On May 03, 2019, Emma Pacetti, who is Hispanic, and is a Senior Manager, came to Plaintiff's Branch Banking Center to deliver a written warning to Plaintiff about her "performance deficiencies" alleged to have been made about her by Joseph Cross. The warning letter was full of false accusations and Plaintiff refused to sign it. The written warning was in retaliation because Plaintiff had complained about "J.S." and the incident that happened on April 30, 2019. Plaintiff attributed it to that incident because there was now a public record (in the form of a Police Offense/Incident Report) pertaining to the incident involving "J.S.", which occurred on CNB's premises and which CNB perceived to cause CNB to be cast in a negative light.

28. In the First Quarter of 2019, Plaintiff was expected to receive several thousands of dollars for her quarterly performance incentive. Instead, on May 15, 2019, CNB paid Plaintiff an incentive payment via payroll (direct deposit) for the amount of $450.00, as payment of Plaintiff's incentive for the First Quarter of 2019. Furthermore, for the Second Quarter of 2019, Plaintiff's performance was equally outstanding, yet she did not receive any quarterly performance incentive payments. Plaintiff spoke with some of her peers to inquire about their quarterly performance bonuses. Plaintiff's peers with whom she spoke told her that each had received several thousands of dollars, as quarterly incentives for both the First and Second Quarters of 2019. Plaintiff requested a copy of her performance sheets for the quarters in question in order to determine Plaintiff's entitlement to quarterly performance incentive. Defendant provided Plaintiff with a copy

of the performance reports, but intentionally and purposefully redacted the performance incentive amount that Plaintiff should have received and edited the numbers to reflect the amount of zero dollars ($0) as performance incentive payments due Plaintiff. Defendant has been unable to give Plaintiff a satisfactory explanation for the drastic cut in Plaintiff's quarterly incentive performance bonus payments for the First and Second Quarters of 2019.

29. Defendant created a hostile work environment which caused Plaintiff to have a higher level of stress than normal. Plaintiff now suffers high blood pressure, headaches, heart palpitations, and stress syndrome, which makes Plaintiff unable to perform her daily routine and to interact with others in certain environments. Plaintiff has had to request FMLA ("Family and Medical Leave Act"), as a result of the hostile work environment in order to address her health needs.

30. Plaintiff has a satisfactory evaluation from Defendant CNB.

31. CNB delegated to its senior manager(s) the power to affect Plaintiff's compensation and the terms, conditions and privileges of Plaintiff's employment.

32. The conduct of CNB, by and through its administrators and senior manager(s), deprived Plaintiff of her statutory rights under Title VII.

33. As a direct, natural, proximate and foreseeable result of the CNB's actions, Plaintiff suffered pecuniary losses, loss enjoyment of life, loss of dignity and other non-pecuniary losses and intangible injuries.

34. CNB was willful and wanton, and in such disregard of the Plaintiff's rights not be discriminated against on the basis of race, or national origin, or retaliated against Plaintiff for complaining about the new Branch Business Banker ("J.S."), so as to entitle

Plaintiff to punitive damages to punish Defendant CNB for its actions and to deter it and others from such actions in the future.

## COUNT I
## VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
## RACE & NATIONAL ORIGIN DISCRIMINATION

35. Plaintiff sues Defendant and re-alleges Paragraphs 1 through 34, inclusive, as if fully incorporated herein by this reference.

36. This action is based upon Race and National Origin under Title VII.

37. CNB has fifteen (15) or more employees for each working day in each of the twenty or more calendar weeks in 2016, 2017, 2018, and 2019 calendar years, respectively.

38. Plaintiff is Black, of Haitian national origin, ancestry or decent and is member of a protected group.

39. Plaintiff performed her job satisfactorily.

40. CNB treated similar-situated employees outside of the Plaintiff's protected class more favorably.

41. CNB's conduct violated Title VII in that Plaintiff was discriminated against on the basis of her Race and/or National Origin.

42. As a result of CNB's actions, Plaintiff has been damaged.

WHEREFORE, Plaintiff, NATACHA ALEXANDRE, prays that this Court:

a. Advance this case on the docket;

b. Issue a declaratory judgment that Defendant's practices toward Plaintiff violated her rights under Title VII;

c. Enjoin Defendant, its employees and supervisor staff form continuing or maintaining the policy, practice, or custom of denying, abridging, withholding, or

        conditioning the rights of employees on the basis of their race, or national origin, which rights are secured by Title VII.

    d.    Order Defendant to remedy the racial discrimination against Plaintiff by:

        1.    Paying appropriate back pay;

        2.    Paying prejudgment interest; and

        3.    Providing any other relief that this Court deems appropriate.

    e.    Enter a Judgment against the Defendant for Compensatory Damages;

    f.    Enter a Judgment against the Defendant for punitive damages; and

    g.    Enter a Judgment against the Defendant for costs, and a reasonable award of attorneys' fees pursuant to Title VII.

## **COUNT II**
## **RETALIATION**

43. Plaintiff sues Defendant and re-alleges Paragraph 1 through 34, as if fully incorporated herein by this reference.

44. This is an action for retaliatory conduct under Title VII.

45. Defendant retaliated against Plaintiff because Plaintiff complained about a new hire (Business Banker) who was insubordinate to Plaintiff and because she (Plaintiff) called Police and Fire Rescue to the Branch Banking Center while the new hire (Business Banker) was having a mental/emotional breakdown. Thereafter, Defendant gave Plaintiff two (2) warning letters for no apparent reason.

46. Defendant CNB retaliated against Plaintiff by denying Plaintiff her Performance Incentive Bonus for First Quarter and Second Quarter 2019.

47. Defendant retaliated against Plaintiff by micro-managing Plaintiff's work and duties.

48. CNB retaliated against Plaintiff for her exercising her rights afforded her under Title VII.

49. CNB violated Plaintiff's privilege of employment in violation of Title VII.

50. As a result of Defendant's violation of Title VII, Plaintiff has been damaged.

WHEREFORE, Plaintiff, NATACHA ALEXANDRE, prays that this Court:,

    a. Advance this case on the docket;

    b. Assign this case for hearing at the earliest practicable date and cause this case to be in every way expedited pursuant to 42 U.S.C. § 2000e-5(f)(5);

    c. Issue a declaratory judgment that Defendant's practices toward Plaintiff violated her rights under Title VII;

    d. Enjoin Defendant, its administrators, directors and supervisors from continuing or maintaining the policy, practice, or custom of denying, abridging, withholding, or conditioning the rights of employees on the basis of their national origin, which rights are secured by Title VII.

    e. Order Defendant to remedy the National Origin discrimination against Plaintiff by:

        1. Paying appropriate back pay;

        2. Paying prejudgment interest; and

        3. Providing any other relief that this Court deems appropriate.

    f. Enter a judgment against Defendant for compensatory damages;

    g. Enter a judgment against Defendant for punitive damages; and

    h. Enter a judgment against Defendant for costs and a reasonable award of attorneys' fees pursuant to Title VII.

Respectfully submitted on this 17th day of December, 2019.

**JAMES JEAN-FRANCOIS, P.A.**
Duty Free Americas, Suite 211
6100 Hollywood Boulevard
Hollywood, FL 33024
Phone: (954) 987-8832

Fax: (954) 987-2622
E-mail: (P) *jamesjeanfrancoisesq@hotmail.com* (P)
         *jjonlaw@hotmail.com* (S)

By: _____/s/_____
  **JAMES JEAN-FRANCOIS, ESQ**.
  Fla. Bar # 0495115
  Attorney for Plaintiff